# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SHAWN MCKEE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No.  1:25-cv-00362-JLT-SAB

FINDINGS AND RECOMMENDATIONS
RECOMMENDING AFFIRMING DECISION
OF THE COMMISSIONER OF SOCIAL
SECURITY

(ECF Nos. 13, 16)

Plaintiff Shawn McKee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits pursuant to the Social Security Act.  The matter was automatically referred to the undersigned for the preparation of findings and recommendations, Local Rule 302(c)(15), and it is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence.  Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in its analysis of Plaintiff's subjective complaints and his activities of daily living.  Plaintiff further argues that the record is incomplete and that Dictionary of Occupational Titles ("DOT") is obsolete.

For the reasons explained herein, the Court will recommend affirming the final decision of the Commissioner.

1

# I.

# BACKGROUND

## A. Procedural History

On April 11, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 10, 2019.  (ECF No. 10, Administrative Record ("AR"), 21.)  Plaintiff's application was initially denied on July 22, 2022, and denied upon reconsideration on September 21, 2022.  (Id.)  Plaintiff requested before a hearing before an ALJ.  On July 25, 2023, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ.  (Id.)  Plaintiff, vocation expert ("VE") Cheryl Chandler, and cardiac specialist Warren Isreal, MD, testified.  (Id.)  On March 14, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled, as defined by the Social Security Act, from August 10, 2019, through March 31, 2022, the date last insured.  (AR 31.)  On January 16, 2025, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

## B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2022, and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of August 10, 2019, through his date last insured of March 31, 2022.  (AR. 23.)  The ALJ found that Plaintiff had the following severe impairments: disorder of the lumbar spine, lumbosacral radiculitis lumbar degenerative disc disease; disorder of the cervical spine; myocardial infraction with hospitalization; coronary artery disease (CAD); Non-ST elevated myocardial infarction with history of CABG/CAD x3 vessels; abdominal aortic aneurysm, and PAD disorder of the left ring finger.  (AR 23-24.)  However, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 24.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).  Specifically, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently and

push and pull within those weight limits.  He could sit 8 hours in an 8-hour workday one hour at a time taking a one minute to stand and stretch at the end of each hour.  He could stand up to 4 hours in an 8-hour workday up to one hour at a time and then would need to change positions for one minute.  He could walk 4 hours in an 8-hour workday and could walk up to one hour at a time before needing to stand or sit for one minute.  Plaintiff should have a sit/stand option but he would not need to leave the work station and would not be off task.  He would not need to change positions more than every 30 minutes for one to two minutes.  Overhead reaching with the right dominant upper extremity was limited to frequent.  He could occasionally climb ramps and stairs, as well as ladders, ropes, and scaffold.  He could frequently stoop, kneel, crouch, and crawl.  He should not be exposed to concentrated exposure to humidity, wetness, or extreme temperatures, as well as no concentrated exposure to respiratory irritants such as fumes, dusts, gases, or poor ventilation.  He was precluded from job sites with very loud noise like blasting, but office type noise was ok.  He should avoid jobs that require typing or where the use of the third finger on the left non-dominant hand would be necessary.  The loss of use of the left non-dominant third finger would not impact handling and fingering except in instances where the third finger of the left non-dominant hand was necessary as in typing.  (AR 24-25.)

The ALJ then found that that Plaintiff was unable to perform any past relevant work, he was 52 years old on the date last insured, and he had at least a high school education.  (AR 29-30.)  The ALJ discussed that transferability of job skills was not material to the determination of disability because Plaintiff's past relevant work was unskilled.  (AR 30.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured.  (Id.)  Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from August 10, 2019, the alleged onset date, through March 31, 2022, the date last insured.  (AR 31.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF

No. 1.)  Thereafter, the parties filed their briefs on the matter.  (ECF Nos. 13, 16, 17.)[1]

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  Fed. R. Civ. P. Appx. Rule 5; 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

///

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154.  In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless.  Stout, 454 F.3d at 1055-56.  "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'"  Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020).  The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  It is

not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### III.

### DISCUSSION AND ANALYSIS

Plaintiff argues that this matter should be reserved and remanded for three reasons. First, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective symptom testimony, including improperly using activities of daily living ("ADLs") in the analysis. (ECF No. 13, pp. 3-10.)   Second, Plaintiff asserts that the record is incomplete because of an incomplete hearing transcript.   (Id. at pp. 10-11.)   Third, Plaintiffs contends that the DOT is obsolete.   The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 16.)  The Court agrees with the Commissioner.

### A.     Plaintiff's Subjective Complaints

For this issue, Plaintiff essentially asserts that the ALJ gave only a general summary of the evidence and did not delineate what evidence undermined Plaintiff's alleged limitations.   This argument is unavailing.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that

7

testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.[4]

---

[4] The Commissioner has long taken the position that the Ninth Circuit's clear and convincing "standard" with regard a claim involving a claimant's subjective testimony appears to conflict with the substantial evidence standard in 42 U.S.C. § 405(g). (ECF No. 16, p. 7 n.5.) The Court observes that perhaps the Ninth Circuit has not agreed with the Commissioner because the clear and convincing "standard"—in reality—is merely an expression of what, in this area of Social Security, in this Circuit, constitutes substantial evidence under § 405(g). See Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021), quoting Biestek v. Berryhill, 587 U.S. 1148, 102-03 (2019). Indeed, the Supreme Court has observed that "[t]he phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." Biestek, 587 U.S. at 102, quoting T-Mobile South, LLC v. Roswell, 574 U.S. 293, 301 (2015). Moreover, the Court notes that the Ninth Circuit's early use of this type of language in the context of subjective testimony was in describing how an ALJ gave no or inadequate reasons for discounting a claimant's testimony. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). In other words, in Gallant, the Ninth Circuit noted that the ALJ had given "no clear or convincing reasons for rejecting such [subjective testimony] claims." Id.; cf. Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (discussing in a Social Security review context that the hearing examiner failed to expressly state clear and convincing reasons for rejecting two uncontroverted medical opinions). Thus, it does not appear that the Ninth Circuit from the outset was necessarily attempting to align this type of analysis with the same "clear and convincing" standard of proof at trial in civil cases.

However, through the passage of time, the standard for analyzing a claimant's subjective testimony has been truncated to the shorthand phrase "clear and convincing" standard. See, e.g., Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989) ("The Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering."); Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) ("[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."); Smartt, 53 F.4th at 499 ("[W]e must determine whether the ALJ properly discounted Smartt's subjective testimony under the 'clear and convincing' standard."). To be sure, the Ninth Circuit has stated that "[t]he clear and convincing standard is the most demanding required in Social Security cases," Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); yet even this phrase cabins the 'standard' in the realm of

The ALJ summarized in part Plaintiff's subjective complaints as follows:

> The claimant alleged disability from two herniated discs, degenerative arthritis, heart attack, and chronic obstructive pulmonary disease.  On May 25, 2022, he completed a Function Report and stated he was unable to stand or sit for long periods.  He had little grip in his hand and could not lift more than 20 pounds.  He was able to manage his personal care, prepare meals, and could do laundry, as well as yardwork but no mowing.  He walked daily, could shop in stores for groceries and could handle his own funds.  He liked to watch television, play the guitar daily but was more difficult now, and socializes in person.

(AR 25, citing Exhibits 2E-3E.)  The ALJ then gave a summary of the medical evidence, where at times the ALJ noted further subjective testimony from Plaintiff.  (AR 26)  For example, the ALJ observed that,

> The claimant presented to the cardiology center for follow-up examinations.  Within a month, he denied any chest pain, shortness of breath, nausea, vomiting, dizziness, palpitations, or syncope.  He also reported that he was compliant with his medications and tolerated them well.  He also admitted to continuing smoking cigarettes.  The physical examinations were normal, including normal heart rate and rhythm, no murmurs, no rubs, and no gallops (Exhibit 6F, pp. 3-4, 8-9, 18-19).

* * *

> On October 5, 2022, the claimant reported experiencing numbness in both of his legs but denied any pain when walking.  He also denied any chest pain, shortness of breath, nausea, vomiting, dizziness, palpitations, or syncope, palpitations, or edema.  The physical examination was normal for the heart and extremities

_____

Social Security cases, signifying (at least to this Court) that it does not necessarily conflict with the substantial evidence standard in 42 U.S.C. § 405(g).

With this understanding, the Court agrees with the Ninth Circuit's continued use of this formulation for the legal standard regarding a claimant's subjective testimony.  That said, the Court also takes the position that clarification by the Ninth Circuit on this point might be warranted in an appropriate case.  Thus, the Court acknowledges that the Commissioner's argument on this issue is taken.

With all that said, the Court wades into these murky waters only because in reply Plaintiff suggests that the Commissioner seeks a "watered down" analysis with regard to Plaintiff's subjective testimony.  (ECF No. 17, pp. 2-6.)  Not so.  The Commissioner, in a footnote, merely raises this argument ostensibly for purposes of preservation on appeal.  (ECF No. 16, p. 7 n.5.)  In addition, the Court rejects Plaintiff's contention that by raising an issue with the "clear and convincing" standard, that the Commissioner has somehow "forfeited this issue entirely."  (ECF No. 17, p. 2.)  The Court finds that the Commissioner was clear that, "[n]onetheless, the ALJ's findings pass the Ninth Circuit's [clear and convincing] test."  (ECF No. 16, p. 7 n.5.)  Thus, the Commissioner's ultimate position on this issue is for an affirmance under either 'standard.'

Having disposed of this auxiliary argument, the Court will continue to apply prevailing Ninth Circuit precedent in its analysis regarding a claimant's subjective testimony.

(Exhibit 9F, pp. 6-7).

\* \* \*

Although the claimant reported chest pain on May 16, 2023, the physical examination was normal.  He was referred to have an Echo with Doppler and Adenosine SPECT (Exhibit 13F, pp. 1-2).

\* \* \*

The claimant reported low back pain, bilateral lower extremity pain, numbness and tingling to the lower extremities more to the left then the right.  He also reported shoulder pain.  Medication including Tramadol and Lyrica helped with the pain and caused no side effects.  He also reported adequate activity of daily living.  Physical examinations showed positive tenderness of the lumbar spine and posterior superior iliac spine.  There were also positive straight leg raising tests and positive Hawkins in the right shoulder.  However, there was normal muscle strength of the lower extremities, negative Hoffman, and no edema (Exhibit 5F, pp. 12-14, 16, 18).

\* \* \*

[Following a lumbar transforaminal epidural steroid injection,] the claimant reported his low back pain and bilateral lower extremity pain was mostly stable.  However, he reported having neck pain.  He also continued to report walking every day, stretching every morning, and having adequate activity of daily living with negative adverse reaction and negative abnormal behavior.  Physical examinations continued to show tenderness, positive straight leg raising on the left, decreased range of motion oof the lumbar spine, but there was normal muscle strength of the lower extremities and 4/5 muscle strength in the upper extremities with no edema (Exhibit 10F, pp. 4-11).

(AR 26-27.)  Following the evaluation of medical opinions, the ALJ then returned to Plaintiff's subjective testimony regarding symptoms:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects on his symptoms, they are inconsistent because cardio findings were stable.  Diagnostic tests were generally mild with normal ejection fraction.  Physical examinations showed radiculopathy and reduced ranges of motion, but motor strength and gait were normal.  He also did not need an assistive device to

10

> ambulate properly (Exhibits 1F; 2F, p. 26; 5F, pp. 12-14, 16, 18; 6F, pp. 3-4, 8- 9, 13-14, 18-19; 9F, pp. 6-7; 10F, p. 10; 13F, pp, 3-8; 14F, p. 10; 15F, pp. 3-6).

(AR 29.)

While the ALJ did not conduct a full summary of Plaintiff's subjective complaints in one area of the opinion, the Court finds that, in context, the ALJ adequately identified Plaintiff's subjective testimony and gave reasons for why the ALJ did not find certain portions credible. The Court observes that the ALJ began with some general testimony from Plaintiff regarding total disability, sitting, standing, grip, and lifting. The ALJ then went through a discussion of medical evidence, identified testimony from Plaintiff regarding intensity, persistence, and limiting effects on his symptoms, and gave exact reasons for discounting all or portions thereof. For example, the ALJ identified that Plaintiff reported low back pain, bilateral lower extremity pain, numbness and tingling to the lower extremities more to the left then to the right, as well as shoulder pain. (AR 27.) However, the ALJ also identified that Plaintiff was using medication, which helped and caused no side effects. (Id.) The ALJ also discussed ADLs and physical exams that gave a fuller picture to Plaintiff's reports. (Id.)

Plaintiff argues that the ALJ's opinion on this regard is nonetheless flawed in three respects. The first two arguments collapse into each other; essentially Plaintiff argues that the ALJ did not identify or briefly summarize the subjective symptom testimony from the hearing, which would mean that the ALJ could not have linked any analysis to the identified testimony. Last, Plaintiff argues that the ALJ relied only on boilerplate language in its analysis. In support of his position, Plaintiff directs the Court to certain parts of the hearing testimony where Plaintiff testified to symptoms (as well as ADLs):[5]

> ATTORNEY: Shawn, I wanted to ask you about – the record shows that you suffered an amputation on your left ring finger. I wanted to ask you if that affects your activities of daily living and provides any limitations to you.
>
> PLAINTIFF: Yes, sir, it does. I have problems with such as

---

[5] The Court notes that Plaintiff also directs the Court to the ALJ noting in the hearing that Plaintiff had shortness of breath during an adenosine drug administration. (ECF No. 13-1, p. 6.) The Court finds this to be an observation in a medical opinion of a physical reaction, not subjective testimony by Plaintiff regarding his symptoms. In any event, the ALJ found that Plaintiff's "cardio findings were stable" in the medical evidence. (AR 29.)

11

buttoning pants, holding things in my hand, typing I have problems with. . . . It's hard for me to put into words.  It's several compounded little things that people take for granted—buttoning pants, tying shoes, holding silverware correctly is—things are awkward in regard to the left hand and it does cause pain.  The finger was reattached and it doesn't bend properly, so.  I used to play guitar; I can't play like I used to.  That's basically all I can think of as far as – like it's on the left hand.

ATTORNEY: Shawn, I want to ask you about, you know, your heart condition, the heart attack.  I know we spoke [to] a medical examiner as to more technical aspects of that but I want to get from your words essentially how your heart condition affects your everyday life if anything, any examples you can provide.

PLAINTIFF: I am constantly tired.  I know he said that I said I do a lot of walking, I do not walk as much as he was portraying.  I try to walk a block a day and that wears me out.  I'm out of breath, I'm tired, and I just have no energy whatsoever.  Now I don't know that that's due to heart issues, or COPD issues, or the combination of both but I—I have to force myself to get out of bed and that in itself is a process as he said.  The doctor mentioned the stretching, I do stretch every morning.  They are very minimal stretches to loosen my back.  They are exercises—bridge exercise. I don't know if you know that is but basically you lay flat on your back with your knees up in the air and you basically lift your back up off the bed.  And that is basically the extent of the stretching I have to do before I can get out of bed.  And that usually requires a pain pill to even start that.  So I—I'm not sure exactly how my heart plays into all of that or if it's a factor at all but it's something I deal with every day.

ATTORNEY: Thank you, Shawn.  You mentioned being constantly tired, do you nap? Do you take naps sometimes, once a week, once a day, or not at all?

PLAINTIFF: Well, to be honest I actually do nap probably twice a day.  I don't sleep well at night.  I wake up with neck pain, back pain.  My right arm cramps due to the stenosis in my neck and it just randomly cramps.  If I try to wash my hair daily I get two minutes with my right hand to lather and rinse and my arm's done for an hour.  And I have cream I have to use on my arm to relieve that pain.

ATTORNEY: . . . you mentioned taking two naps a day, how long do those naps last.?

PLAINTIFF: Generally about an hour to an hour and a half.  It's usually right after I take my medication I get some relief from the pain and I'll sit on my heating pad for a little bit and I generally fall asleep.

ATTORNEY: Thank you.  And then moving back to what you're describing, what's going on with your right arm if you can describe what the effects you feel in your arm, what happened?

PLAINTIFF: Well, from what I understand it is from a stenosis in my neck is a pinching on the spinal column and it causes nerve pain. My arm just will suddenly feel like it's cramping up. Like for instance I've thrown a nine inning baseball game and I have hardly used my arm. I mean if I write a sentence on a piece of paper my arm cramps. It's terrible.

ATTORNEY: Could you give us any more examples as to how your right arm limits your ability to do things in everyday life?

PLAINTIFF: It's hard for – I – I've been dealing with it so long that I don't realize how I'm overcompensating at times. I have a hard time, you know, washing my hair as I said and typing, thing of that nature. Even holding my phone up to my ear is stressful on my arm and hurts, so.

ATTORNEY: You mentioned COPD, Shawn, and that also may contribute to your fatigue. What can you tell us about that, any other effects of COPD that limits your ability to function on an everyday basis?

PLAINTIFF: Just shortness of breath. I lose my air quite easily and I – I can't walk more than probably 100 yards without having to stop and catch my breathe and that takes 30 or 40 sections and I can go another 100 yards. And then my legs are wore out, my breathing is hard. I basically have to sit down then for ten or 15 minutes and – I – . . . it limits me from doing much shopping. Grocery store is hard for me. I occasionally go but most of the time I will either stay in the vehicle or I will have to get a cart if there's one available while I'm getting my shopping. And as far as everyday things go that's probably how it affects me the most.

ATTORNEY: Are you able to walk without assistance or you use a walker, a cane, or any assistive device?

PLAINTIFF: I do use a cane. I don't use it 100% of the time but most generally I use it to upkeep my balance. I 've always had balance issues all my life, that's nothing new for me, but my legs get weak and I do need something to lean on so I do carry the cane with me most of the time.

ATTORNEY: Why do your legs get weak? If you know, what the doctors are telling you is going on with your legs?

PLAINTIFF: Okay. Well, that was the original reason I started seeing the doctor was because I was having leg problems. And we finally figured out that it was because of my lower back was pinching something and deteriorated somehow as to where my legs weren't functioning properly. Once I started dealing with my back my legs got better but not completely better. And so the legs have been an issue from the start of this but it was – it's due to my back that my legs were not functioning properly.

* * *

13

> ATTORNEY: Why don't you drive?
>
> PLAINTIFF: I have no restrictions from having a driver's license. I occasionally will have dizzy spells and I have a problem telling the colors and the lights. My eyes are getting bad to where the color recognition is not as sharp as it used to be and it scares me.
>
> ATTORNEY: How often do you get these dizzy spells you mentioned?
>
> PLAINTIFF: They are not frequent but maybe once very four or five months and there's no rhyme or reason.

(AR 75-80.)

Though Plaintiff testified to a mix of subjective complaints about symptoms and ADLs, the Court nonetheless finds that the ALJ adequately addressed the testimony she found to be either partially or completely incredible. Again, an ALJ need only identify and explain testimony the ALJ rejects in whole or in part. Lambert, 980 F.3d at 1277 ("[T]he ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.") For example, Plaintiff contends the ALJ did not address Plaintiff's issue with handling and fingering due to surgical reconnection of left ring finger and loss of significant use of it. However, this is belied by the RFC, which incorporates this limitation insofar as "[Plaintiff] should avoid jobs that require typing or where the use of the third finger on the left non-dominant hand would be necessary. The loss of use of the left non-dominant third finger would not impact handling and fingering except in instances where the third finger of the left non-dominant hand was necessary as in typing." (AR 25.) The Court finds this limitation congruent with Plaintiff's testimony at the hearing. Another example is Plaintiff's contention that the ALJ did not address his shortness of breath; however, the ALJ specifically discounted, in part, Plaintiff's testimony, finding that "cardio findings were stable," and citing to exhibits. (AR 29.) Moreover, the RFC painstakingly addresses Plaintiff's requirements regarding standing/sitting, changing of physical positioning, as well as walking. (AR 25.) The Court finds Plaintiff's remaining contentions regarding Plaintiff's subjective testimony unpersuasive for the same or similar reasons. Relatedly, as explained above, the Court finds that the ALJ did identify the testimony she rejected in whole or in part from Plaintiff and

14

gave reasons for doing so.

Finally, Plaintiff misunderstands the import of Lambert with regard to boilerplate statements regarding a plaintiff's subjective testimony. In Lambert, the Ninth Circuit discussed the boilerplate language ALJs use when finding that a "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision." 980 F.3d at 1277 (alteration in original). Yet, the evil the Ninth Circuit was discussing was not the use of this phrase in and of itself but that such a high-level phrase was insufficient *on its own* to discount a claimant's subjective testimony. Indeed, the Lambert Court noted that this "'boilerplate statement' by way of 'introductory remark,' . . . is 'routinely include[d]' in ALJ decisions denying benefits." Id., quoting Treichler, 775 F.3d at 1103. Yet, in Lambert, "the ALJ did not 'identify what parts of the claimant's testimony were not credible and why." Id., quoting Treichler, 775 F.3d at 1103. Therefore, Plaintiff's observation that the ALJ used a substantially similar phrase here is of no moment in light of the analysis above.

For the forgoing reasons, the Court finds that the ALJ did not err in its analysis of Plaintiff's testimony regarding subjective symptoms.

**B.    Activities of Daily Living**

Plaintiff separately argues that the ALJ erred in relying on Plaintiff's ADLs in controverting Plaintiff's subjective symptom testimony. (ECF No. 13, p. 9-10.) The Court is not convinced.

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p, available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96–7p (Cum. Ed.1996), available at 61 Fed. Reg. 34,483-01 (July 2, 1996). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation omitted).

Regarding ADLs, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001). Yet, in assessing a claimant's subjective testimony, the "ALJ may consider . . . 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" Molina v. Astrue, 674 F.3d 1104, 1112, quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). In addition, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Id. at1113, citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id.

Here, as Plaintiff points out, the ALJ cited to Plaintiff's own self-report that Plaintiff had no problems with personal care, he could prepare meals, could do laundry, as well as yardwork with no mowing. (AR 25, citing AR 295-96.) Plaintiff also reported that he walked daily, could shop in stores for groceries, and could handle money. (AR 25, citing 297.) The Court finds that these findings from the ALJ support the ALJ's overall determination that Plaintiff was not generally disabled. Molina, 674 F.3d at 1113.

Moreover, as quoted heavily above, the ALJ discussed at times Plaintiff's testimony on his subjective symptoms and then cited to ADLs as cutting against such symptoms. For example, Plaintiff reported lower back pain, yet at the same time reported "adequate activity of daily living." (AR 27, citing Exhibit 5F, pp. 12-14, 16, 18.) Moreover, the ALJ did not rely on ADLs alone in discrediting this part of Plaintiff's testimony regarding his lower back pain. The ALJ also pointed to physical examinations, other testing, and observation that Plaintiff had normal muscle strength of the lower extremities. (AR 27.)

Beyond these observations, the ALJ either did not use ADLs to discredit parts of Plaintiff's testimony and, again, apparently incorporated some of these limitations into the RFC as well. For example, Plaintiff takes issue with the fact that he testified that he could grocery shop but only once a week for up to two hours only. Yet, the RFC incorporates that Plaintiff should have a

sit/stand option that allows changing position at least every 30 minutes. (AR 25.) Furthermore, the RFC incorporates that Plaintiff can walk for one hour at a time before requiring a break, and in total, Plaintiff cannot walk more than four hours in an eight-hour workday. (AR 25.) Thus, it appears that the ALJ merely incorporated this ADL into the RFC, which therefore would not require an adverse credibility determination. Though Plaintiff also testified at the hearing that he could not walk farther than 200 yards without needing a 15-minute break, the ALJ specifically found that Plaintiff's cardio findings were stable, physical examinations showed Plaintiff's gait was normal, and Plaintiff did not require an assistive device to ambulate properly. (AR 29, citing Exhibits 1F; 2F, p. 26; 5F, pp. 12-14, 16, 18; 6F, pp. 3-4, 8- 9, 13-14, 18-19; 9F, pp. 6-7; 10F, p. 10; 13F, pp, 3-8; 14F, p. 10; 15F, pp. 3-6.) Therefore, these contentions are of no merit.

Again, the in realm of reviewing an ALJ's assessment of a plaintiff's subjective testimony regarding symptoms, "the standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499. The Court finds that the ALJ's assessment was clear enough to have the power to convince.

Accordingly, the Court finds the ALJ did not err is her discussion of Plaintiff's ADLs.

### C.    Incomplete Record

Plaintiff argues that the transcript of the proceeding is inadequate because at times there are portions labeled as inaudible, citing to the Program Operations Manual System of the Hearings, Appeals, and Litigation Law Manuel ("HALLEX"). (ECF No. 13-1, p. 11.) Upon review of the record, the Court disagrees.

The agency has included deficiencies that would make a record incomplete:

> If a record is not complete, it is not a "full and accurate" record of the proceedings relating to the litigated claim. When the record is incomplete, the court legal assistant must modify the certification and footnote any missing materials on the index to the record as well as in the record where the missing document or other material would have appeared. Such deficiencies may include:
>
> missing exhibits pertaining to the current claim;
>
> missing transcript(s) of oral hearing(s);
>
> missing translation(s); and

"inaudible portions" noted in the transcript of oral hearing that are significant in length or are the result of equipment malfunction.

HA 01420.030 Certification of the Administrative Record.

As the Commissioner notes, the only applicable reasons here for finding that the record is not 'full and accurate' would be that the text labeled as inaudible would be for a significant length or the result of an equipment malfunction. (ECF No. 16, p. 14.) Here, Plaintiff has not argued that the inaudible portions are from an equipment malfunction. (ECF No. 13-1, pp. 10-11.) Plaintiff argues only that there are missing sections of audio that may involve Plaintiff's subjective testimony.

Tellingly, Plaintiff does not go into the length of these inaudible "sections," which the Court finds were essentially dropped words. For example, on AR 49 it is clear that Plaintiff, the medical examiner, and the ALJ were talking over each other when Plaintiff was trying to answer that he had a recent stress test done. Plaintiff stated, "Yeah, [inaudible]." But immediately Plaintiff clarified, "I did have a nuclear stress test." (AR 49.) On AR 52, there are three inaudible portions of the medical examiner talking to the ALJ about where a report was in the record, which was eventually located; this appears to be immaterial. Again, on AR 63, it appears Plaintiff was interrupting his attorney, labeled as "inaudible," but then immediately gave an answer to the attorney's final question. A similar issue occurred on AR 69.

The Court finds that the context of what was discussed in these portions made the inaudible word either obvious or it was otherwise inessential to later testimony that clarified inaudible words. Significantly, none of these dropped words went on for any extended length of time but appear sporadically, as Plaintiff notes, twelve times.

Therefore, Plaintiff has not demonstrated that that record was incomplete.

**D.      The Dictionary of Occupational Titles**

In an argument that boarders on conclusory, Plaintiff argues essentially that the DOT is outdated regarding the actual jobs that exist in the current national economy. Beyond relying on commonsense arguments, Plaintiff cites to only one real precedent in support of his position, White v. Kijakazi, 44 F.4th 828 (9th Cir. 2022). Yet, Plaintiff did not even attack the national jobs

18

as the Ninth Circuit outlined an attorney might do at the appeal's council review. Otherwise, the only other argument the Court can discern from Plaintiff is that he is asking that the Court to potentially enter the realms of the Legislative or Executive branches by either rewriting the DOT or declaring it obsolete (without a justiciable hook). Of course, that is not the function of judicial review. In any event, the Court will discuss Plaintiff's precedent and argument.

In White, the plaintiff did not specifically object to the VE's testimony regarding numbers of jobs during the hearing before the ALJ. 44 F.4th at 832. Rather, the plaintiff asked the VE about the source of the estimated jobs. Id. at 831. The plaintiff then submitted argument and additional credible evidence to the Appeals Council concerning inconsistent job numbers. Id. at 832. Regarding preservation, the Ninth Circuit explained that "the Appeals Council is the final level of SSA's administrative review," and the "SSA's decision is not final until the Appeals Council denies a request for review, or, if it accepts a case for review, until it issues its own findings." Id. at 835. The Court then noted that "SSA regulations permit a claimant to submit additional evidence to the Appeals Council if the claimant shows good cause for not having submitted it earlier." Id. at 836-36, citing 20 C.F.R. § 404.970(b); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162-63 (9th Cir. 2012). With that understanding, the Court reviewed the plaintiff's job numbers claim and ultimately reversed the district court's grant of summary judgment to the Commissioner based on the evidence offered. Id. at 837; see also Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that a claimant's failure to raise an issue "at both her hearing before the ALJ and the Appeals Council" constitutes forfeiture).

In contrast (and not brought up by Plaintiff), the Ninth Circuit later discussed in Wischmann v. Kijakazi, 68 F.4th 498 (9th Cir. 2023), evidence offered to the appeal's council on the issue of jobs in the economy that was not probative; this evidence was printouts that did not indicate the process by which the data were generated or how the information on the pages supported the attorney's claim regarding job numbers in the national economy. Id. at 506-07. Critically, Wischmann addressed the appropriate standard for when a claimant wishes to challenge the numbers in the national economy regarding jobs in the DOT. "Although the agency has not directly addressed the ALJ's responsibility to resolve a conflict between the VE's job-number

19

estimates and the claimant's job-number estimates, [the Ninth Circuit has] held that—as with any other inconsistency in record evidence—the ALJ may have a duty to address such a conflict." Id. at 505, citing Buck v. Berryhill, 869 F.3d 1040, 1051-52 (9th Cir. 2017) (collecting cases); White, 44 F.4th at 836-37. That duty arises only "where the purportedly inconsistent evidence is both significant and probative, as opposed to 'meritless or immaterial.'" Id., quoting Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193-94 (9th Cir. 2022). After all, an ALJ "'need not discuss all evidence presented to her. Rather, [an ALJ] must explain why 'significant probative evidence has been rejected.'" Id., quoting Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Thus, the Ninth Circuit clarified that, when federal courts "determine whether the ALJ had a duty to address a conflict in job-number evidence (and failed to discharge that duty), [those courts are to] consider on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value." Id. at 506.

Instead of attacking the numbers of actual jobs in the economy as outlined in White and Wischmann, Plaintiff quotes that the Ninth Circuit recently lamented that "[w]e join our sister circuits in encouraging the SSA to make the transition to a system that more accurately reflects available jobs in the current economy." White, 44 F.4th at 835. Yet, even White upheld the DOT, underscoring for this Court that Plaintiff's general claim that the DOT is obsolete to be without force.

In sum, the ALJ did not err nor has Plaintiff demonstrated that reversal is appropriate.

**IV.**

**CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY RECOMMENDED that the final decision of the Commissioner of Social Security be AFFIRMED and judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Shawn McKee.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **January 14, 2026**

STANLEY A. BOONE
United States Magistrate Judge